Good morning, your honors, and may it please the court. Michael McGill on behalf of the appellants. We're here today because the district court erred. And it erred when it reviewed the plaintiff's speech in a rigid fashion. Instead of reviewing it as a whole, it selected isolated portions of the grievances, which showed that the plaintiffs had some remote personal interest at stake, focused on those, and determined that the speech was not a public concern. I sure have read them as a whole, from the first informal grievance through the human resources complaints. And it seems to me that they all, at their core, had to do with personality issues between Derochers and Lowe's, and Kimball, or Mencken, Bood, whomever. But it seems to me, at the core, they don't like each other. And they don't – there's no question about that. And they disagreed about things. But it's just – it's an employee grievance. Nothing ever happened outside. There wasn't any public discussion about how the police department is administered. These folks didn't go public, and their human resources complaint was plainly marked confidential. So – Your Honor, I respectfully disagree. I know you do. That's why I laid it out for you, so you can tell me why. I think the starting point is correct, the informal grievance. And if you go to the informal grievance, of course, it was verbal, and it was with the assistant chief. Now, the city, the assistant chief generated a memo of his interpretation of what happened at that informal grievance meeting. And in that memo, he states that there's an ongoing and a continuing issue that was complained about by outside agencies, other police departments, that Kimball's interaction not just with the plaintiffs, not just with Lowe's and DeRocher's, but with the entire team, all the team members, was causing problems. And it was complained about by outside members. And this is important because this sets the state of mind of the plaintiffs. They go into that informal grievance, and they tell the assistant chief that that interaction, the interaction between Kimball and all the individuals, is risen to the level as to impact the operational efficiency and effectiveness of the unit, of the teams. And that's their state of mind going in there. These ---- I'm not ñ I don't know what their state of mind was. All I know is what the conversation was about. Correct. And the conversation, which is reduced to writing, is that it's affecting the team. It's not a personal issue. Yeah. No, but it is a personal issue unless it's public. And I look at this thing and see absolutely nothing to suggest that any part of this was a public concern. Well, Your Honor, if we can look then at the formal grievance. At the formal grievance? It was filed confidentially to human resources. Nobody went out ñ and I understand a private expression of concern can matter if it's over something like discrimination, which is inherently a matter of public concern. But just because you've got issues between police officers over arrogance and, you know, the way they exercise authority or whatever, even though it gets to the human resources level, doesn't mean that people are out on the street saying, you know, geez, the police department's falling apart, like they did in the library case, let's say, for example. Your Honor, respectfully, the officers, they were trying to resolve this with the city. And there's no ñ the authority doesn't require them to go to the press or call the Department of Justice. I mean, they're trying to resolve this internally, and the fact that they make that attempt in that forum doesn't negate the public nature of it. I mean, I represent not just the ñ Well, it doesn't establish it either, does it? One of the things that bothers me in some of these cases is the tendency to constitutionalize employee relations issues. And I'm not persuaded that this isn't on that side of the line. Well, Your Honor, it reaches that point. It reaches a constitutional issue when you have officers who are concerned about the effectiveness of the unit, and you have Department of Morale. And the interaction between Kimball and all of the officers, not just the plaintiff, was affecting morale, was affecting the department, was affecting their ability to engage in their profession and carry out the public safety mission. Well, you see, there's ñ there's no suggestion of that. That's the whole thing. Well, there is, Your Honor. I have actually ñ I have probably 20 bullet points here up front that I pulled straight from the grievances that outline the fact that those are the concerns. Oh, I don't doubt it. They did not get along, that's all, period. I mean, these guys did not get along with Kimball. They didn't much care for Manten, and they didn't like Boone. And they had their preferred boss whom they asked to have substituted in their place. I mean, I don't have any quarrel with that, but I read in vain for any indication that there was any public concern about the ñ about safety issues, the police defaulting on their responsibilities to maintain the public order. Well, Your Honor, you have to take basketball cards and view the speech in terms of context. The four people involved here, the two plaintiffs and the other two sergeants, these are the team leaders for the four units that Kimball oversees. So it's not like Kimball just happened to have a personal issue with these four individuals. These are the four individuals who are in charge of their units, in charge of their teams, and they came together and were voicing their problems with Kimball through management. So it's not a personal issue in that sense. So what I'd like to do is go through the grievance and make some of these points. There's no requirement that they take it public. Absolutely not. In this case, they were required to follow the internal grievance procedure. I'm sorry, what's the question? It was an internal grievance procedure that had to be filed. So whether or not they take it public, what we have to look is the content, context, and form of the communications. And I think it's close, whether or not they were just complaining about they didn't like Kimbrough's thought management styles, arrogance, whatever. Or whether they were making a larger complaint that did affect the public interest in terms of was the San Bernardino Police Department being crippled in its effectiveness by the mismanagement in these four units. So if you could speak to what they said, form, content, and context of what they said that would be of concern to members of the public. That would be helpful. Well, as I stated earlier, one of the concerns was the interaction between Kimbrough and an outside agency. And that's well documented inside the grievance. And that's a problem where other agencies came to these plaintiffs and voiced their concerns that they weren't cooperating, basically. That the public safety mission wasn't being accomplished because there wasn't great interaction between the individuals. And that's in the grievance. What's also in the grievance is, repeatedly, the plaintiffs stating that, listen, it's not a personal thing in the sense that I don't care what you're saying to me, if you walk me out of the unit, I will leave. But what you need to do is start treating people more properly and better. Although that sounds like personality difficulties. You don't like the guy. If it was simply that, Your Honor, we wouldn't be here. But it's that and the fact that we're in a police department. And these people are testifying to the fact that they're receiving complaints from other people. It's affecting their morale, their ability to work with other officers. And- How did it affect the operation of the police department? And if you look at, say, the Johnson case, where there was mismanagement. It was also internal. There was mismanagement alleged in instances of mismanagement. In all of the instances in this case, the mission was still accomplished. Well, in the sense that we don't have a specific incident where Kimball's issues resulted in a tragedy. We don't have that. I apologize. I'm a little bit under the weather. But we weren't in the position to allow it to come to that point. We weren't going to wait for something to happen. I mean, these guys, these plaintiffs, they are 20-year veterans. And they are seeing these problems. They're seeing the way it's affecting the unit. And they're trying to stop it before it gets to a point where it does result in a tragedy. You know, San Bernardino is, you know, one of the highest, has one of the highest crime rates in the state, murder rates in the country. And you have team leaders, you know, the homicide sergeant, Sergeant DeRoshers, the narcotics sergeant, Sergeant Lowes, testifying that Kimball's issues were affecting their teams. And that's the reason they brought this to the department's attention. And I don't think it's fair to say, well, they need to wait until something happens, a tragedy happens before it reaches that constitutional level. The idea behind what they were trying to accomplish was stated, and I think appropriately stated, in the introduction of the grievance. In the introduction of the grievance, they write that the grievance is a necessary step forward in an attempt to change the culture of this police department and the way we treat each other. The actions that are requested, they request new actions. And those actions are not personal. They're not asking for money. They're not asking for a personal benefit, a monetary benefit of some kind. They're asking for things to take place for the betterment of the department. So that they don't reach that stage where there is a tragedy, where there is a problem that develops. And on page 477 of the record, that's where we have the actions that are requested. And I can go through those if the court prefers, but they really do outline the purpose, and that's the state of mind that these officers have when they're going forward. I understand- Can I ask you, this is a little off target, but we do have the Garcetti case in the Supreme Court fairly recently. Is there any Garcetti issue in this case? In other words, speaking as a citizen rather than as an employee? I don't believe so. The court didn't make a ruling on that. I know it didn't, but I'm just asking your perspective on it. There's not because these officers aren't paid to report internal misconduct, internal personnel violations. That's not what they're paid to do. That's not part of their job responsibilities. It may be buried somewhere in a catch-all on a job application that they're supposed to do all things in furtherance of their, of the mission, but it's not the thrust of their job to do that. So we don't view it as being a Garcetti issue in this case. All right. I'll reserve the remaining time. You may do so, counsel. That's fine. We'll hear from the city. Good morning. May it please the court. My name is Jim Odlem, and I represent the defendant's appellees in this case. The two issues that I want to address initially are the conic issue, private versus public concern, and then I will turn to the Garcetti issue, which I think is an important issue in this case also. On the conic issue, this is not a public concern. This is a classic private employee grievance. One thing I do agree with my opponent on is that one needs to look at the grievance as a whole and find out what the focus of the grievance is. And the conic case says that, and so does some of the authority from the Ninth Circuit, including the Poole versus Ream case. And to kind of put it in the vernacular, I think the grievance really is, these people thought that Kimball was a jerk. He was an autocratic jerk, and he did not like the way that he managed them. That's a classic. One of your clients that you're representing characterized DeRosier-Zemo's complaint as speech raising concerns about the operational efficiency and effectiveness of the units over which Kimball had control. Didn't Mankin characterize that? He characterized, yes, what they were saying. Isn't that a public concern if the court's most important or top homicide has problems with? I'm sorry, I didn't hear that last part. Isn't that a public concern if the behavior of the supervisor for very important departments within the San Bernardino Police Department is affecting the operational efficiency management? Why not? No, because the Connick case says that that type of thing is not, does not. The Connick case does not say that. Your Honor, in Connick, there was a questionnaire that was distributed, as I'm sure the court knows. Though I know the Connick case well. Okay. And it doesn't say that if you're talking about the operational efficiency and effectiveness of a city's police department, that that would not be a matter of public concern. Connick dealt with a district attorney's office, which I would submit to the court is a law enforcement agency, at least as important as a police department. And the questionnaire did deal with things like morale, efficiency, supervision. I'm sorry. I think Connick is pretty distinguishable on the factual aspects from this case. Your Honor, if the rule were that every time someone alluded to supervision affecting the efficiency of a police department, virtually every employee in grievance in a police department or other important governmental agency, a court, for example, automatically takes on constitutional ramifications. It doesn't. How so? How so? Well, for example, the court, the Ninth Circuit, in a case that was decided after this case was briefed called Posey v. Lake Pend, cited in footnote 5 to say that we were going to, the Ninth Circuit was going to adopt what the Sixth Circuit did in looking at whether things are mixed, mixed speech, part public, part private. And there is a case from the Sixth Circuit called Haynes v. City of Circleville, which is, I think addresses the issue that Your Honor was mentioning. In Haynes, a police canine handler, his budget was going to be cut and he wouldn't get as much training as he had before. And he protested that internally. And he said that the chief of police was guilty of deliberate indifference, negligence, failure to train, and he alluded to public safety being affected by that. And the Ninth, excuse me, the Sixth Circuit looked at the substance, the context, the form, and the content of the communication and said, quote, it was nothing more than a quintessential employee beef. Management has acted incompetently. And it went on to say the fact that there's speculation that this may affect public safety because the dog trainer wouldn't be as effective was not enough to change the fundamental nature of the grievance. And I think the same logic applies here. Kennedy, counsel, you've cited the Sixth Circuit case. As I read our own cases, I'm not entirely convinced that we've spoken with one voice in this area, but what would you identify as being the strongest case or cases from the Ninth Circuit to support your position? Some of the cases, including the ones that were cited by the court, the district court here saying, and I'm struggling to remember the name of the case, but basically it says an internal power struggle on a public agency is not a matter of public concern. And it is cited in my brief, but I apologize, Your Honor, I'm not able to grab it. All right. We have it from the briefs, but I just was hoping you could help. The case is Tucker v. California Department of Education. You're right, Your Honor. I think the Ninth Circuit has not spoken in one voice. There is dictum in cases. It says, to the effect of what Judge Wardlaw was alluding to, is that something that has to do with the efficiency of a police department becomes public interest. That's dictum in cases in which people wrote to the newspaper, went to the city council, went on TV. And also, obviously, if people were having their constitutional rights violated in the police department, or there was people taking money under the table, those would be matters of public concern, even if they were internal. Would you, I mean, from your perspective, would a requirement that the officers like the officers here, that instead of following the grievance procedure, they should go to the press and say, this person is endangering the public safety? Are you arguing that that should be the preferable role? Because if they had gone to the press, instead of following the internal grievance procedures, and said, we've got this really bad egg in the department. He will not cooperate with other cities. He's possibly dangerous to the mission of public safety in San Bernardino. They've gone out as citizens and described themselves as such. Then this would be a much clearer case under Garcetti and other cases. But instead, if they did it in the proper way, they followed the channels that went, filed the grievances in formal, the formal, and the city hall complaint. And as a result, they have a far worse case in terms of protecting their ability to raise matters of concern regarding the operations of the police department. To some extent, you're right. I agree with you, Your Honor. First of all, I don't think even what they did internally was saying that he was dangerous. There's no discussion of anyone's life being put in jeopardy. There's their self-serving speculation, like the dog trainer in the Sixth Circuit case, that in the future, the effectiveness of the department might be impacted. But Connick and its progeny, say you look at the content, the context, and the form. And I guess the context looks at whether you go public or whether you go private. And there's lots of cases, including from this Court, saying that is a factor. It's not determinative. And I concede in my brief, it is not determinative by itself that this was done internally. But it certainly points in the direction of it being not of public interest. And I would point out that I don't think this is a closed case, personally. But if the Court were to think it's a closed case, I think it's a closed case. Well, I can see why you might not. But even if the Court were to consider it a closed case, the Ninth Circuit decision of Roe v. City and County of San Francisco, and if I may quote, in a closed case, when the subject matter of the statement is only marginally related to issues of public concern, the fact that it was made because of a grudge or other private interest, or to co-workers rather than to the press, may lead the Court to conclude that the statement does not substantially involve a matter of public concern. Okay, well, there's no evidence here that this was a grudge, that these statements were made out of the grudge of any person. And there's no, I mean, that quote of Roe does not really apply to this situation here. Your Honor, I've lived with this case for two and a half years. And by the way, there is a state court case involving these exact same facts that's going on right now. And I would respectfully disagree that it is a grudge. These guys, I think as Judge Reimer pointed out, they really don't like Kimball. But there's no evidence in this record that says that. I mean, that's- I disagree. I think if you read the grievance, it's all over the grievance. That these people personally do not like Kimball. They think he's an autocrat, and they do not like the way he supervises them. So I think it is a grudge, but be that as it may. I'd like to turn briefly to the Garcetti issue, because I think that's a huge issue in this case. And although the district court didn't rule on the issue, it certainly was raised and briefed in the district court, and it was briefed here. And in the record is a copy of the job description of a police sergeant. That's at supplemental excerpts 42 through 44. And to summarize, it says basically you're in charge of supervising the people beneath you, ensuring morale, and ensuring the effectiveness of your subordinates. And the grievance, to the extent that they are now trying to characterize it as having bigger concerns, more public concerns, it walks right into the Garcetti issue. They keep talking about the effectiveness of their unit that undermined my authority. And it's tied directly to their job as a sergeant. Now, counsel said that their job is not to file grievances. I guess that's the case. But the fact is, it directly involves the performance and the discharge of their duties, to the extent that they're saying it's anything other than a personal grudge. And this court's decision in the Merrillville case, which involved the ferry boat captain up in Puget Sound, it discusses the Freytag case from this court. And the grievances that were held to be covered by Garcetti in the Freytag case are remarkably similar to this. They talk about undermining authority, preventing her from effectively doing her job. And those things, and I think a decision by Judge Reinhart, he said that those were covered by Garcetti. Well, if you look at this grievance, the language is strikingly similar. Talks about undermining my authority, interference with my supervision. Those go to the heart of what their job is. And this is a Garcetti-type complaint, in addition to being one that, under time, is not covered by the First Amendment. One of the, I think, the policy concerns underlying the Supreme Court's decisions in this area is that the court doesn't want every employee grievance, even in a police department, to turn into a constitutional case. And this, I think, is a perfect example of one that does not implicate the First Amendment. The conduct that these fellows are engaged in is, or was, protected under state law. And they're fighting their state law case as we speak. It is ongoing. And I think it was in the Garcetti case. They pointed out that, okay, this may not be a First Amendment issue. The plaintiff has state law remedies. They should be pursued in state court. And that's exactly what's going on in this situation. Every employee grievance, even in a police department, should not automatically turn into a constitutional dispute, even if they try to kind of put bows and whistles on it and say that, well, it may affect public safety, which, by the way, is rank speculation. The court recently asked us to do a supplemental brief on the qualified immunity issue. And I think that, first of all, it's not necessary for this court to get to the qualified immunity issue because there is no constitutional violation in the first place. But if the court were to not agree with me, at a minimum, these gentlemen are entitled, the individual defendants are entitled to qualified immunity. I don't think it would be reasonable to conclude that the nature of the speech was so clearly protected by the Constitution, that it was clearly established that the speech was constitutionally protected, that it's fair to hold these individuals personally liable. And the Dibble case, D-I-B-L-E from this court, points out that it's a very, very rare situation where employee speech is so clearly, that it's clearly established that employee speech is constitutionally protected. Here, the courts have, and I respectfully think the Ninth Circuit even hasn't spoken with one voice on this issue. It's very hard sometimes to determine whether a speech is constitutionally protected. The unreasonable to expect these policemen to know that. And we have an Article III judge here, Judge Phillips, who looked at it and did a thorough analysis. And she came to the conclusion it wasn't constitutionally protected either. So at a very minimum, these fellows are entitled to qualified immunity. But at the risk of repeating myself, I don't think the court needs to get there, because this is a personal dispute. They don't like Kimball. It's the kind of dispute the Supreme Court has said should not turn into a constitutional issue. Thank you. Thank you very much, Mr. Odlem. You ended right on the button of your allotted time. You can go ahead. The corner of my eye was watching that call. Okay, very well. Mr. McGill, you have some reserve time. Just a few things. Mr. Odlem is correct. They don't like Lieutenant Kimball, but it's not a personal issue. The grievances that the court has reflect that it is not a personal dispute. There are personal incidents in there referenced, incidents that occur that they have knowledge of where they were negatively affected, as were all of the other unit members. But that's not the purpose. That's not the context that the grievance was submitted for. That's not the reason. That's not the purpose that they filed this. In the grievance, one of the plaintiffs writes, I told him, and him being Lieutenant Kimball, that his management style and bullying was negatively affecting my unit, and that if he wanted me out of the unit, I would leave. This wasn't a matter of the plaintiffs not being able to get along with Lieutenant Kimball. This is a matter of the unit, first and foremost. And if it took Sergeant Rosas or Sergeant Rose to leave, that's fine. But the policy violations, the bullying, the misconduct of Lieutenant Kimball is what needed to be remedied. And that was the purpose, and that was the intent in pursuing the grievance. The court asked a little earlier what cases are out there that support what's the best case. There are numerous cases that support our position. There are briefs, McKinley. Which is the first one? McKinley. Oh, McKinley. Gilbrook, and all of the other cases in our briefs. They basically state that the effectiveness of a crime-fighting unit is a matter of public concern. And Mr. Allen keeps referring to this as rank speculation. These are veteran officers. These are people who testify as experts in court as to whatever matters that they need to testify to. So it's not just a matter of speculation. They were trying to do the right thing. They were trying to effectuate change in the department. Not for their good, but for the entire department's good. And there are personal incidents in their grievance, but that's not the thrust. That's not the main focus of the grievances. On a personal note, my office serves as general counsel to not just these plaintiffs, but the San Bernardino Police Office Association. We represent 120 police units in this state. And decisions like this really force us to go public. You know, my advice to all my clients now is if there's an issue like this, don't file a grievance. You're not going to have the protection you need. You need to go to the press. Call the DOJ. Call the AD's office. You need to have a press conference outside City Hall. That's the advice that we are giving to our clients because of decisions like this. Because if there's any inkling that there might be retaliation, these people have to be protected. And the state law claims, the state law claims, they're not as strong. Whatever it is, you know, 11.11 to 2.5 doesn't have an attorney fee provision. So most attorneys aren't going to file a lawsuit for that. You know, government code 53298 doesn't provide, it has certain requirements that are difficult to pursue and it's really tricky to file. So there aren't all of those state law protections that are available to officers. Well, let me ask you, distinguishing Varsetti, were the grievances made by your clients in accordance with their duties as sergeants and heads of their departments, were they required to make these grievances? You know, it seems as though they're sort of damned if they do, they're damned if they don't. If they follow the chain of command and they file a grievance, then it becomes well part of their job duties. That's the argument, at least. If they don't, then they violate the chain of command. Then they're in trouble for something else, going to the press or for going outside the chain. So it's sort of a catch-22 and there's really no clear option. But here, the job description, yeah, I mean, it says they have to ensure the effectiveness of their unit. But that's not the primary part of their job. And at best, I think that's a factual dispute that a jury needs to decide as to whether or not that really is part of their job description. Otherwise, what you're doing really is you're taking all their constitutional rights away. Because if you say they have an obligation to report a criminal act by a co-officer and that's not protected because you have to do that, then you've got no protection at all. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision. And the next case, the last case for this setting will be Turner v. Runnels.
judges: O'scannlain, Rymer, Wardlaw